**Terry L. DAVIS, Plaintiff,**

v.

**CROTHALL SERVICES GROUP, INC., Defendant.**

**Civil Action No. 3:09–cv–00312.**

United States District Court, W.D. Pennsylvania.

Aug. 6, 2013.

Kathryn Sydny Piscitelli, Orlando, FL, Timothy P. O'Brien, Pittsburgh, PA, for Plaintiff.

Christopher Michalski, Robert W. Cameron, Marcy L. McCullough, Vincent J. Mersich, Littler Mendelson, PC, Pittsburgh, PA, for Defendant.

### MEMORANDUM OPINION AND ORDER OF COURT

KIM R. GIBSON, District Judge.

## I. SYNOPSIS

This matter comes before the Court on Defendant's "Motion for Summary Judgment, or, in the Alternative, Summary Adjudication." (Doc. No. 62) and Plaintiff's "Partial Motion for Summary Judgment." (Doc. No. 66). Each party opposes the other's motion and each motion has been fully briefed. For the reasons that follow, the Court will **DENY** Defendant's motion and will **GRANT** in part and **DENY** in part Plaintiff's motion.

## II. JURISDICTION AND VENUE

■ Jurisdiction is proper in the United States District Court for the Western District of Pennsylvania pursuant to 28 U.S.C. § 1331 and 38 U.S.C. § 4323(b)(3) of the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"). Venue is proper under 28 U.S.C. § 1391(b) and 38 U.S.C. § 4323(c)(2).[1]

---

1. Section 4323(c)(2) of the USERRA contains a special venue provision that states: "[i]n the case of an action against a private employer, the action may proceed in the United States district court for any district in which the private employer of the person maintains a place of business." 38 U.S.C. § 4323(c)(2). Plaintiff's complaint (Doc. No. 1) neither in-

## III. BACKGROUND

This case arises out of Defendant's alleged failure to comply with the reemployment provisions of USERRA. (Doc. No. 1 at 1). Plaintiff served a tour of active military duty from early 2006 until June 2007, and alerted his employer, Defendant, of his desire to be reemployed upon his return in April or May of 2007. (Doc. Nos. 64 at 3 ¶ 21, 6 ¶ 45; 70–1 at 10 ¶¶ 57–58). Plaintiff's complaint alleges that Crothall Services Group, Inc. ("Crothall") did not provide him with appropriate reemployment opportunities, as specified under the statute, and this failure to do so led to the instant litigation. (Doc. No. 1 at 1).

Terry L. Davis ("Davis") enlisted for active duty with the Army in 1978. (Doc. No. 64 at 2, ¶ 10). Since that time, he has served either on active duty or reserve status. Currently, Davis is enlisted through 2018. (Doc. No. 64 at 10, ¶ 76). In addition to his military service, Davis was employed by Kinetic Biomedical Services ("Kinetic") since 1988 in various positions. (Doc. Nos. 64 at 2–3, ¶¶ 11–15; 70–1 at 2, ¶¶ 5–6). In 1995, Davis became a Regional Operations Manager ("ROM") for Kinetic. (Doc. Nos. 64 at 3, ¶ 15; 70–1 at 2, ¶ 6). This position entailed responsibility for the Central Region, which consisted of western Pennsylvania, parts of New York, Ohio, West Virginia, and Kentucky. (Doc. No. 64 at 3, ¶ 16). In 2005, Crothall acquired Kinetic and Davis continued to be employed by Defendant as ROM for the company's Central Region. (Doc. No. 64 at 3, ¶ 17). During his employment with both Kinetic and Crothall, Davis was deployed on three separate occasions, with his total time away from the companies being less than five years. (Doc. No. 64 at 3, ¶ 18–21). It was after his third deployment from January 2006 until June 2007 that led to the present dispute. (Doc. No. 64 at 6–7, ¶¶ 45–49).

Prior to his most recent military leave of absence, the Central Region had been experiencing a downturn in economic activity. (*See* Doc. No. 65–1 at ¶ 8). Since 2004, at least five hospital accounts were lost. (Doc. No. 64 at 5, ¶¶ 34–38). By November 2005, the Central Region had the lowest gross profit of all of Crothall's business regions. (Doc. No. 64 at 6, ¶ 40). In January 2006, Davis notified Defendant that he had been called to active duty as a member of the Army Reserves, and would be deploying in February 2006. (Doc. No. 70–1 at 2, ¶¶ 11–12). Crothall granted Davis' request for military leave of absence. (Doc. No. 70–1 at 2, ¶ 12). At some point thereafter, the Crothall corporate offices based in Erie, PA were closed. (Doc. Nos. 65–2 at 20–21; 69–1 at 93–94). The parties dispute, however, the underlying reasons for the closing of these offices, as well as whether or not Davis' ROM

vokes this special venue statute nor does it invoke any venue statute (such as 28 U.S.C. § 1391). Additionally, Plaintiff's complaint only specifies that Defendant's corporate offices are located in Wayne, PA, which is located within the Eastern District of Pennsylvania, and the only connection to the Western District of Pennsylvania pled by Plaintiff is that he is a resident of Clearfield, Pennsylvania. (*See* Doc. No. 1 at 1–2). There is, however, no indication in either Plaintiff's complaint or Defendant's answer, that Defendant does not maintain a place of business within the Western District of Pennsylvania. *See*

*Johnson v. General Dynamics Information Technology, Inc.*, 675 F.Supp.2d 236 (D.N.H. 2009). Indeed, the underlying allegations in the complaint are based upon Defendant's failure to reemploy Plaintiff in its business operations in the Western District. Furthermore, because Defendant did not raise this issue under an earlier motion to dismiss or motion to transfer venue, and because this case has proceeded to the summary judgment stage, the Court deems Defendant as having waived any possible argument as to improper venue on the basis of 38 U.S.C. § 4323(c)(2).

position was eliminated. Crothall contends that when the Central Region offices were closed for declining business reasons, this included the formal elimination of Davis' ROM position. (Doc. No. 65–1 at ¶ 8; 65–4 at 6–8). Plaintiff avers, however, that the closing of the offices was a predetermined decision of the corporate acquisition. (Doc. No. 69–1 at 56, 59–60). Additionally, Plaintiff argues that the company officers who were terminated with these offices were not analogous to Davis' ROM position, but that the Central Region continued to operate after the closing of the Erie office. (*Id.*). Plaintiff also contends that Ken Schwarz ("Schwarz") was named acting ROM for the Central Region at this time. (Doc. No. 70–1 at 6, ¶ 31).

Following the closing of its Erie office, Crothall listed a vacant ROM position— based out of eastern Pennsylvania—to be filled. Defendant states that Crothall added 11 new accounts to the responsibility of Schwarz, who had been employed as the ROM for the Mid–Atlantic Region. (Doc. No. 65–1 at 3, ¶ 9). Defendant also states that the new position was created to help ease the burden of the additional accounts being added in the region. (*Id.*). Davis disputes the assertion that the new ROM position absorbed Schwarz' excess accounts and contends that the allegedly new ROM position took over most of Davis' old accounts. (Doc. No. 69–1 at 75–76). In trying to fill the position, the vacant ROM was listed on Crothall's website for current employees to apply. (Doc. No. 70–1 at 7, ¶ 37). Around June 2006, James Aulisio ("Aulisio") was promoted to this ROM position. (Doc. No. 64 at 9, ¶ 63). Prior to his hiring as ROM, Aulisio had served as an Account Supervisor, a subordinate position to the ROM position. (Doc. No. 70–1 at 6, ¶ 36).

Crothall insists that Aulisio's ROM position was an entirely new ROM created to

ease the burden of Schwarz, and had the Plaintiff not been on military leave of absence, he would have had to undergo the same application process as other employees. (Doc. No. 65–3 at 12). Crothall also states that hiring Plaintiff for this ROM position would have been subject to supervisor discretion, as well as an application and interview process. (Doc. No. 65–5 at 5). Davis asserts that his previous ROM position was never eliminated, and that this new ROM position ultimately occupied by Aulisio was in fact his position. (Doc. No. 69–1 at 65–66). Even if not the same position, Plaintiff avers it is reasonably certain that he would have held this ROM position had he been at Crothall when it was listed. (Doc. Nos. 69–1 at 65–66; 69–2 at 4–6; 69–4 at 28–29). He states that since the regions are similar and there is account overlap from the previous Central Region, Davis would have naturally assumed this position. (Doc. No. 69–1 at 65– 66). Davis also states that Defendant had a corporate policy of moving workers to similar positions if the worker's previous job was eliminated. (Doc. Nos. 69–2 at 4– 6; 69–4 at 28–29). Crothall, however, maintains that this policy still allowed for discretionary actions by supervisors, and would not be automatic. (Doc. No. 65–6 at 3).

In April or May of 2007, Davis alerted Crothall that he would be returning soon from active duty and could return to work on July 1, 2007. (Doc. Nos. 64 at 6, ¶ 45; 69–3 at 35). Plaintiff's supervisor, William Rothgery ("Rothgery"), informed Plaintiff in May 2007 that the Central Region ROM position was no longer available. (Doc. No. 64 at 7, ¶ 46). Davis informed Rothgery that he would consider accepting a similar ROM position if it required relocation. (Doc. No. 70–1 at 11, ¶ 62). Rothgery offered Plaintiff a technician job (BMET I/II), a position four grades below that of ROM. (Doc. No. 70–1 at 11–12,

¶ 67). Crothall asserts that Davis was additionally offered four other positions at the time, including that of Account Supervisor. (Doc. No. 64 at 7, ¶ 48). Crothall further maintains that any position to which Davis was hired would have provided the same pay and benefits, with increases, along with relocation costs, if needed. (Doc. No. 64 at 7, ¶ 50).

Davis claims that the salary for the BMET I/II position would have been less than his previous ROM salary. (Doc. Nos. 69–2 at 26–28; 69–3 at 26–29, 55). He further states that he was never formally offered any position other than BMET I/II, and that the other jobs were only linked on a vacancy page on Crothall's website. (Doc. No. 79 at 16–17, ¶¶ 47–48). Plaintiff did not accept any of the positions. (Doc. No. 64 at 7, ¶ 49). Davis contends that he did not accept these positions based upon the belief that they were inferior to his prior employment with Crothall. (Doc. No. 64 at 7, ¶ 49). Plaintiff also avers that all positions offered by Crothall were insufficient in regards to Crothall's USERRA obligations. (Doc. Nos. 69–1 at 89; 69–4 at 2–3).

On June 22, 2007, Schwarz resigned his position as ROM. (Doc. No. 64 at 9, ¶ 67). Davis states that Schwarz had given notice to Crothall of his resignation on June 11, 2007. (Doc. No. 70–1 at 11, ¶ 64). Defendant counters, however, that this resignation did not create a vacancy, as there was no plan to fill the position. (Doc. Nos. 65–3 at 16–17, 19–20; 65–4 at 9). Instead, Crothall decided to disperse the remaining accounts under Schwarz' responsibility to other Crothall ROMs, and thus never actually created a vacant position. (*Id.*). Plaintiff asserts that even though the vacancy was never filled when Schwarz resigned, there was in fact a vacancy. (Doc. No. 69–1 at 83–84).

On June 20, 2007, Plaintiff was released from active duty. On June 22, Davis' employment with Crothall was terminated because of his "fail[ure] to return from leave of absence." (Doc. No. 69–1 at 18). In July 2007, Davis lodged a complaint with the Department of Labor VETS division. (Doc. No. 64 at 7, ¶ 53). In August 2007, Davis reenlisted for active duty with the Army for a three year period. (Doc. No. 64 at 10, ¶ 70). In December 2007, through the DOL investigator, Crothall informed Davis that a ROM position was available in Chicago, IL, and it would be offered to Plaintiff if he wanted it. (Doc. Nos. 65–2 at 51, 93; 65–3 at 21–22). Davis decided to decline the offer because he was under contract with the U.S. government. (Doc. No. 65–2 at 52, 69–4 at 3). Additionally, he asserts that the offer for the Chicago ROM position was not "unconditional." (Doc. No. 69–4 at 3). In December 2009, Plaintiff filed the instant action against Crothall, and the parties have proceeded to the summary judgment stage of litigation.

Defendant filed this Motion for Summary Judgment, or in the Alternative, Summary Adjudication. (Doc. No. 62). Plaintiff opposes Defendant's motion, and has also filed his own Partial Motion for Summary Judgment. (Doc. No. 66). Defendant opposes Plaintiff's Motion. The motions have been fully briefed and are ripe for determination.

## IV. STANDARD OF REVIEW

"Summary judgment is appropriate only where, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact . . . and the moving party is entitled to judgment as a matter of law." *Melrose, Inc. v. Pittsburgh,* 613 F.3d 380, 387 (3d Cir.2010) (quoting *Ruehl v. Viacom, Inc.,* 500 F.3d 375, 380 n. 6 (3d Cir.2007)); *see*

also *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(a).[2] Issues of fact are genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also McGreevy v. Stroup,* 413 F.3d 359, 363 (3d Cir.2005). Material facts are those which will affect the outcome of the trial under governing law. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. If the moving party meets this burden, the party opposing summary judgment "may not rest upon the mere allegations or denials of the ... pleading," but "must set forth specific facts showing that there is a genuine issue for trial." *Saldana v. Kmart Corp.,* 260 F.3d 228, 232 (3d Cir.2001) (internal citations omitted); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Podobnik v. U.S. Postal Serv.,* 409 F.3d 584, 594 (3d Cir.2005) (noting that a party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted).

**2.** Rule 56 was revised in 2010. The standard previously set forth in subsection (c) is now codified as subsection (a). The language of this subsection is unchanged, except for "one word—genuine 'issue' bec[ame] genuine 'dispute.'" Fed.R.Civ.P. 56 advisory committee's note, 2010 amend.

**3.** The PMAA is to be interpreted in conformity with USERRA. Specifically, 51 Pa.C.S.A. § 103 states that, "[i]t is the intent of this title

## V. DISCUSSION

Defendant argues that summary judgment should be entered in its favor because Plaintiff's former employment position was eliminated while he was deployed overseas and this does not violate the reemployment provisions of USERRA. Specifically, Defendant contends that Plaintiff is not entitled to recovery under USERRA or the Pennsylvania Military Affairs Act, 51 Pa.C.S.A. §§ 7301 et seq. ("PMAA"),[3] because Crothall underwent changed circumstances that occurred during Plaintiff's deployment such that it made his reemployment impossible or unreasonable, and because Defendant was not required to displace other employees in similar positions since none of them occupied Plaintiff's former position. (*See* Doc. No. 63 at 5–6, 11). Alternatively, Defendant argues that if the Court finds summary judgment is not appropriate on these bases, then the Court should at least summarily adjudicate the issue of damages in their favor. (*Id.* at 13). In addition to opposing Defendant's Motion, Plaintiff asks this Court to enter summary judgment in Plaintiff's favor on his claim that Defendant violated USERRA when it failed to reemploy him. (*See* Doc. No. 67 at 1). Also, Plaintiff requests that the Court find against Defendant's affirmative defenses of changed circumstances and offers of like positions, as well as Defendant's contention that Plaintiff did not mitigate his damages. (*Id.* at 19–22).

that it shall be in conformity with all acts and regulations of the United States affecting the same subjects, and all provisions of this title shall be construed to effectuate this purpose." Courts have analyzed claims arising under the PMAA using the same analysis for same claim arising under the USERRA. *See Murphy v. Radnor Tp.,* 904 F.Supp.2d 498 (E.D.Pa. 2012).

## A. Defendant's Motion for Summary Judgment

In its motion for summary judgment, Defendant argues that it complied with USERRA and did not violate the statute's reemployment provisions. Specifically, Defendant avers that it is entitled to protection under the statute's affirmative defense of changed circumstances. (*See* Doc. No. 7, ¶ 7). This defense provides an exception to the mandatory reemployment of a veteran under USERRA: an employer is not required to reemploy a person if "the employer's circumstances have so changed as to make such reemployment impossible or unreasonable." 38 U.S.C. § 4313(d)(1). Defendant claims declining business in its Central Region led to the elimination of Plaintiff's previous ROM position, and in turn made his reemployment impossible. (*See* Doc. No. 64 at ¶ 44).

Additionally, Defendant argues that Plaintiff does not state a valid claim under USERRA because Crothall offered valid positions of reemployment with the same pay and benefits Davis enjoyed prior to deployment. (*See* Doc. No. 65–3 at 18). Defendant contends that because Davis did not accept the offered positions, he forfeited his claims under USERRA. (*See* Doc. No. 63 at 11). Davis disputes that these positions were adequate alternatives and that his refusal to accept these positions bars his recovery under USERRA. (*See* Doc. No. 81 at 17–18).

Crothall also argues that Plaintiff is barred from recovery under USERRA because Davis failed to mitigate his damages. (*See* Doc. No. 63 at 13). Defendant contends that by refusing to accept any alternative positions offered by Crothall, as well as by failing to seek similar positions with other companies and reenlisting in the Army just over a month after seeking reinstatement, Davis withdrew from the workforce voluntarily and thus did not properly mitigate his damages. (*Id.* at 13–16).

Finally, Defendant requests that if summary judgment is not granted in its favor, then the Court should grant its motion for summary adjudication against Plaintiff's claims for damages. Defendant first argues that damages should be confined to the period of July 1, 2007 until August 7, 2007—the time Plaintiff requested to be reinstated until he reenlisted in the Army. (*Id.* at 15). Alternatively, Defendant requests that damages be confined to the period of July 1, 2007 to December 21, 2007, when Plaintiff refused the Chicago ROM position. (*Id.* at 16). Defendant avers that this position met its requirements under USERRA and terminated Plaintiff's cause of action at that time. (*Id.*).

Plaintiff opposes Defendant's motion on all issues. Davis argues that the circumstances at Crothall had not changed as to make employment impossible or unreasonable. (*See* Doc. No. 81 at 4). Plaintiff further states that he did mitigate his damages through prompt reenlistment in the Army. (*Id.* at 18, 20). Plaintiff argues that the other offered positions were not sufficient under USERRA, and the Chicago ROM position was not only an inadequate reemployment position, but was also not offered in a timely manner. (*Id.* at 20–22). Additionally, Plaintiff argues in his motion that he is entitled to liquidated damages because Crothall's failure to meet its USERRA obligations cannot be diminished due to reliance on in-house counsel advice. (*Id.* at 22–24).

### 1. Defendant's compliance with USERRA

Defendant argues that it met its obligations for reemploying Davis. (*See* Doc. No. 63 at 4). It avers that it underwent changed circumstances, preventing reem-

ployment of Plaintiff, and cannot be held liable under USERRA. (*Id.* at 5). Defendant contends that though it was not required to do so, it offered Davis several other positions, and that these positions would have provided the same pay and benefits as Plaintiff's previous ROM position. (*Id.* at 9–10).

Plaintiff disagrees and counters that Defendant failed to comply with USERRA because: (1) Defendant did not properly assess the reemployment position using the escalator position principle; (2) elimination of Plaintiff's previous position did not itself render reemployment impossible or unreasonable; (3) the lack of vacancies in ROM positions did not make reemployment impossible or unreasonable; and (4) "bumping" other employees to properly reemploy Plaintiff did not constitute impossible or unreasonable changed circumstances. (*See* Doc. No. 81 at 1). Davis

argues that Defendant should have placed him into a ROM position because circumstances had not changed so drastically as to make reemployment impossible or unreasonable. (*Id.*). Further, Davis alleges that the alternatively-offered positions were not of like status, pay, and seniority, and thus violated USERRA. (*Id.* at 17).

The Court will address each of these arguments in turn.

### a. Changed Circumstances

Defendant argues that because of declining business in the Central Region, it decided to eliminate the Central Region ROM, and because this position no longer existed, "it would have been 'impossible or unreasonable' for Crothall to return Plaintiff to his former position." (Doc. No. 63 at 2, 6). Plaintiff disputes several of Defendant's allegations regarding the changed circumstances at the company.[4]

---

4. As a threshold matter, Davis also argues that Defendant did not adequately engage in an analysis of the proper escalator position. Defendant maintains that such an analysis was not necessary; however, if it was necessary, Plaintiff's proper reemployment position would have been that of termination. Twenty C.F.R. § 1002.192 states that "in all cases, the starting point for determining the proper reemployment position is the escalator position, which is the job position that the employee would have attained if his or her continuous employment had not been interrupted due to uniformed service." 20 C.F.R. § 1002.192 (1996).

Courts have held that internal reorganizations may result in elimination of a veteran's position while the veteran is deployed, rendering it impossible to reemploy the plaintiff in his former position because it no longer existed. *Rivera–Meléndez v. Pfizer Pharmaceutical, Inc.*, 2011 WL 5025930 (D.P.R. Oct. 21, 2011) (finding that when the employer eliminated all positions of the same title of the employee, the employee could not demonstrate an automatic "escalator position" right to the higher of two newly created positions, since the positions were filled on a discretionary basis).

Defendant argues that case law supports interpretation of 20 CFR § 1002.192 and USERRA to be that, when an employee's position has been eliminated, this escalator analysis is not required. (*See* Doc. No. 86 at 2–3). The company is still required to make a reemployment offer if possible, by offering the closest available positions. (*Id.* at 3). In *Rivera–Meléndez,* the Court accepted the company's placement of the veteran into the lower of the two newly-created positions replacing the eliminated pre-deployment position. *Rivera–Meléndez,* 2011 WL 5025930 at *9. Defendant therefore argues that by offering the nearest positions available, they were compliant with the standards established through the courts' interpretation of this rule. Plaintiff, however, disputes that this is the proper interpretation of the rule. (*See* Doc. No. 81 at 1–2). Rather, Plaintiff argues that in *all* cases, the employer *must* determine the proper escalator position, where the employee would have been employed regardless of deployment. (*Id.*) Here, Plaintiff contends that Davis would have been placed in a different ROM. (*Id.* at 2) Therefore, Plaintiff argues that it must be "impossible or unreasonable" for Crothall to be able to reemploy Plaintiff in the escalator position for the changed-circumstances affirmative defense to apply. (*Id.* at 4).

(*See* Doc. No. 81 at 1). Namely, Davis challenges the notion that his previous position was in fact eliminated. (*Id.* at 4). Plaintiff additionally avers that even if the position was eliminated, circumstances had not changed so drastically as to make reemployment impossible or unreasonable in a similar ROM position. (*Id.* at 5). Here, the Court will first analyze under the summary judgment standard whether the position was eliminated. If it is found that it was indeed eliminated, then the Court will proceed to analyze whether Defendant can avail itself of the changed circumstances affirmative defense.

■■■■ USERRA provides employers with certain affirmative defenses that allow the employer to be released from its responsibility to reemploy the service member. *See* 38 U.S.C. § 4312(d); 20 C.F.R. § 1002.193. Among these, is the "changed circumstances" defense, which allows an employer to be exempt from reemploying the employee if "the employer's circumstances have so changed as to make reemployment impossible or unreasonable." 38 U.S.C. § 4312(d)(1)(A). The Code of Federal Regulations clarifies that:

> Even if the employee is otherwise eligible for reemployment benefits, the employer is not required to reemploy him or her if the employer establishes that its circumstances have so changed as to

make reemployment impossible or unreasonable. For example, an employer may be excused from reemploying the employee where there has been an intervening reduction in force that would have included that employee. The employer may not, however, refuse to reemploy the employee on the basis that another employee was hired to fill the reemployment position during the employee's absence, even if reemployment might require the termination of that replacement employee

20 C.F.R. § 1002.139(a). Thus, this "exemption to USERRA's reemployment requirement is an affirmative defense, and the employer bears the burden of proving that it had a change in circumstances and the impossibility or unreasonableness of reemployment." *Talley v. Shaw Maint., Inc.*, 1:11–CV–1044, 2012 WL 3961280 (W.D.Ark. Sept. 10, 2012). Permitting this exemption serves the purpose of allowing "employers who have eliminated a reservist's position or otherwise drastically changed their business to avoid rehiring someone for a job that no longer exists. If mere replacement of the employee would exempt an employer from the Act, its protections would be meaningless." *Cole v. Swint*, 961 F.2d 58, 60 (5th Cir.1992) (ruling that hiring a replacement does not change circumstances for the employer).

---

The applicable case law appears to support Defendant's interpretation of the rule, rather than Plaintiff's black-and-white interpretation of the language in § 1002.192. Therefore, this Court will analyze this issue only under the framework outlined in *Rivera–Meléndez*. However, even if the Court permitted Plaintiff's interpretation of the law, summary judgment would not be granted, because there would still be a general dispute of material fact between the parties. Assuming the first step to be an escalator position analysis, in an instance where an employee's position is eliminated, termination or transfer could be a completely acceptable escalator position. *See Milhauser;* 20 CFR § 1002.194. Defendant

could argue that Plaintiff would have been either terminated or transferred to one of the lesser positions. Plaintiff would maintain that the company policy in position-elimination situations would have transferred Plaintiff into a different ROM position. (*See* Doc. No. 6). This factual incongruity as applied under Plaintiff's legal interpretation would necessarily lead a reasonable fact-finder to doubt which scenario is true. While Defendant's motion for summary judgment would be denied in this situation, for reasons listed below, this Court would be left in the exact same position as it is now. Nevertheless, this Court declines to interpret this law in a manner not consistent with other courts.

Courts generally require that an employer show that reinstatement of the employee to his former position would be unreasonable or would result in hiring the employee to a position that no longer exists. *See Id.* at 60. The purpose of the provision is to relieve employers of the burden of creating useless jobs. *See Allyn v. Abad,* 167 F.2d 901, 904 (3rd Cir.1948). The Third Circuit has determined "unreasonable" to mean more than inconvenient or undesirable. *Kay v. General Cable Corp.,* 144 F.2d 653, 655 (3rd Cir.1944) (holding that inconvenience and added expense are not enough to deny a veteran a position as a doctor). Courts have also noted that, in order to avail itself of this defense, the reemployment situation need not be an impossible one for the employer. *See Mowdy v. ADA Board of Education,* 440 F.Supp. 1184, 1192 (E.D.Okla.1977) (finding that while reemployment would not be impossible where veteran's former job was later held by a contracted employee; reemployment, however, would be unreasonable because it would cause the defendant to break a contract made in good faith with the new employee).

Within these limits, elimination of the employee's position may, in light of the surrounding circumstances, excuse the employer from reemployment responsibilities. *See Rivera–Meléndez v. Pfizer Pharmaceutical, Inc.,* 2011 WL 5025930, *10 (D.P.R. Oct. 21, 2011). Internal reorganizations that eliminate an entire position can make it impossible for the employer to place the employee in the position occupied prior to military service. *See Id.* at *11. One court has found that if the employee did not inform the employer of his intent to return, and the employer enters into a contractual obligation with another employee to fill the position, the employer does not have to reemploy the veteran. *See Mowdy,* 440 F.Supp. at 1184. In another instance, a staffing agency did not have to rehire a veteran when the veteran's temporary position was no longer necessary. *See Madden v. Rolls–Royce Corp.,* 2008 WL 747290 (S.D.Ind. Mar. 18, 2008) (finding that employee's position would have been eliminated due to increased work demands by staffing agency's clients).

Where a decrease in company business comes into play, however, courts have been explicit about how an elimination of one's position affects the changed circumstances defense. For example, one court found that a reduction in force must have "reasonably included" the employee, irrespective of the employee's military service, to sufficiently change an employer's circumstances. *See Davis v. Halifax County School System,* 508 F.Supp. 966, 968 (E.D.N.C.1981) (citing *Kay,* 144 F.2d at 655). Another case has held that restructuring leading to elimination of a position objectively viewed as precisely similar to veteran's position at time of his leave of absence is not a sufficient reason to deny reinstatement. *See Allyn,* 167 F.2d at 904. "Mere low work load, layoffs, and a hiring freeze" also do not create circumstances so changed as to render reemployment unreasonable or impossible. *See Dunlap v. Grupo Antolin Kentucky, Inc.,* 2007 WL 855335, *3 (W.D.Ky. Mar. 14, 2007). Downsizing just to "keep the doors open" and claims of incapability of reemployment due to financial constraints without detailing how the employee would have exactly fit in such downsizing and reduced employment is insufficient for a changed-circumstance defense. *Cooper v. Hungry Buzzard Recovery, LLC,* 2011 WL 5299422, *2–3 (W.D.Wash. Nov. 4, 2011). Thus, where a defendant claims that circumstances had changed to the point that the returning veteran's position has been eliminated, the threshold issue that must be

determined is whether the position, in fact, was eliminated or was merely the product of a restructuring. In essence, there must be evidence of a fundamental underlying shift in the business model and reality of a company's enterprise in order to avail itself of this defense.

Here, Defendant asserts that the circumstances surrounding the business conditions in its Central Region had changed so dramatically such that "shortly after Plaintiff's deployment in January 2006, Crothall eliminated the [ROM] position for the Central Region." (Doc. No. 63 at 6). Defendant states that because Davis' position was eliminated, it would be justified in not reemploying him into his previous ROM position because such circumstances would make reemployment impossible or unreasonable. *Id.* at 9. Plaintiff disagrees with this assessment and both Crothall and Davis articulate differing views on the status of Davis's predeployment ROM position and the subsequent business conditions of the region. While Crothall demonstrates that the economic decline of the Central Region led to closure of the Erie offices and elimination of the Central Region (Doc. Nos. 65–1 at ¶ 8; 65–4 at 6–8), Davis points out that the offices were planned for elimination once Crothall acquired Kinetic, and were unrelated to a financial downturn in the region. (Doc. Nos. 69–1 at 49–51; 80–5 at 3–4). Crothall indicates that after this decision was made, Plaintiff's ROM position was not filled because it had been eliminated. Davis, however, points out that Schwarz was named acting Central Region ROM, and that along with the promotion of Aulisio, the Davis' previous ROM position was not eliminate, but rather restructured. (Doc. Nos. 69–2 at 46; 69–3 at 32 ¶ 6). These varying perspectives present a factual dispute regarding the actual elimina-

tion of the Davis' ROM position, as well as the circumstances leading up to the decision to elimination the position. Additionally, the promotion of Aulisio to the allegedly new ROM position does case some doubt as to whether Davis' position had been eliminated, or whether accounts had been merely shifted around under a restructuring plan. Davis not only disputes the underlying facts evidencing the changed economic circumstances, but also the extend of the circumstances alleged by Crothall. (*See* Doc. No. 81 at 5). He argues that, even if these changes are undisputed, they were not pervasive enough to make reemployment impossible or unreasonable.[5] (*Id.*). Davis points to evidence that four different ROM positions were filled during his time on military leave of absence. (*See* Doc. No. 69–3 at 42–43). He contends that with these positions, it is unlikely that the underlying business conditions had changed the circumstances such that Crothall would have to eliminate his ROM position. In essence, Davis asserts that by filling these four positions and promoting Aulisio to a ROM position highlights not the elimination of Davis' position, but rather the restructuring of his previous position. Thus, such a scenario would tend to undermine Crothall's claim that reemployment would be impossible or unreasonable due to changed circumstances.

The question of whether or not the Central Region ROM was in fact eliminated is fundamental to Defendant's claim that circumstances had changed so drastically as to exempt it from reemploying Davis. Based on Defendant's evidence, a jury could reasonably determine that the Plaintiff's position was eliminated in response to decreasing business in the Plaintiff's region, ending the need to have a ROM

---

5. *See, supra,* n. 2.

serving the area. This could possibly meet the standard articulated and repeated in *Swint, Kay, Rivera–Meléndez,* and *Davis.* That is, an employer may be relieved of its duty to reemploy a returning veteran if the position has been eliminated. Despite this, however, a reasonable jury could also determine on the basis of Plaintiff's evidence that the position was only transferred in location and given other accounts to increase the company's efficiency without increasing overhead. Undoubtedly, this would fail to meet the "impossible or unreasonable" standard. The dispute surrounding the material facts as to the status of this position—whether it was eliminated or not—precludes this Court from granting summary judgment on the issue.

Thus, the Court finds a genuine dispute of material fact as to whether or not the pre-deployment position was actually eliminated. Since this issue must be left for the fact-finder to determine, the Court will not engage in the consequent analysis of whether the circumstances at Crothall had sufficiently changed to prevent reemployment had the position in fact been eliminated. Because a factual dispute concerning the elimination of the pre-deployment ROM position necessarily precludes a determination of whether changed circumstances applies to this position, the Court will continue its analysis of the remaining issues on summary judgment.

### b. Displacement of Other ROMs

Crothall next argues that because Plaintiff's pre-deployment position was eliminated, it was under no obligation to displace any of its other ROM employees. (*See* Doc. No. 63 at 11). Defendant points out that USERRA only requires displacement of employees who hold the veteran's pre-deployment position. Defendant states that all of its ROM positions at the time were unique from the one occupied by Plaintiff prior to his deployment. Crothall

argues that because there were no vacant ROM positions upon his return, Defendant only had the responsibility to offer other available positions, but not another ROM position. (*Id.*). Plaintiff disagrees and asserts that it is impermissible for Defendant to argue that it can skirt its USERRA obligation to reemploy Davis in a ROM position simply because no other vacant ROM positions were available upon his return. (*See* Doc. No. 81 at 13). Plaintiff avers that his position was not actually eliminated. Rather, he contends, it was restructured and transferred to Aulisio and that, upon his return, Davis should have re-occupied the ROM position, thereby displacing Aulisio. (*Id.* at 4, 13).

USERRA's regulations provide that an employer may not "refuse to reemploy the employee on the basis that another employee was hired to fill the reemployment position during the employee's absence, even if reemployment might require the termination of that replacement employee. 20 C.F.R. § 1002.139(a). "A returning veteran will not be denied his rightful position because the employer will be forced to displace another employee." *Nichols v. Department of Veterans Affairs,* 11 F.3d 160, 163 (Fed.Cir.1993) (determining a chaplain's return position inadequate, especially in light of current position being filled by another employee). A position cannot be determined to be unavailable "because it still exists, even if occupied by another," and the returning veteran cannot have rightful position denied because "the employer will be forced to displace another employee." *Id.* at 163. The employer cannot claim as a defense that the company will be forced to "demote or bump one of its present employees" to ensure the proper promotion, since the employer "must tailor [the employer's] work force to accommodate returning veteran's statutory rights" under USERRA. *Goggin v. Lin-*

*coln St. Louis*, 702 F.2d 698, 703–04 (8th Cir.1983), citing *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 285, 66 S.Ct. 1105, 90 L.Ed. 1230 (1946) (holding that a promotion based on seniority, being the appropriate ladder position, cannot be denied simply because no positions are available at the time of the veteran's return). USERRA requires that "the employee should be restored to his position even though he has been temporarily replaced by a substitute who has been able ... to make it desirable to make the change permanent." *Kay v. General Cable Corp.*, 144 F.2d 653, 655–56 (3d Cir. 1944).

Case law is well established in applying this provision, and both parties agree that replacement is not enough to deny reemployment. As discussed above, however, substantial questions exist as to whether or not Plaintiff's position was eliminated or merely transferred. This fact weighs heavily on Crothall's obligation to displace another employee. Defendant and Plaintiff dispute the degree of overlap between the accounts held by Davis in his former ROM position and those held by Aulisio upon Davis' return. Additionally, the disagree as to whether this overlap contributes to a single, transferred position, or two distinct ROM positions. If the jury found the position to be eliminated, Crothall would not have been required to displace Aulisio under the USERRA provisions. In such a situation, Crothall would be correct in stating that it bears no obligation to displace another employee to make a ROM vacancy for Plaintiff. Conversely, if Plaintiff's averments were found by the jury to accurately portray the sequence of events concerning the Central Region ROM, the jury would find Aulisio to be in Plaintiff's former ROM position. In this situation, which would closely mirror the *Nichols* case, Defendant would be required to displace Aulisio to hire Plain-

tiff back to his former position, pursuant to USERRA.

Plaintiff also argues that because he should have been placed in his escalator position, the analysis as to whether his pre-deployment job was identical to Aulisio's is not dispositive. (*See* Doc. No. 81 at 16). He argues that the Aulisio ROM was his escalator position, and therefore Aulisio should have been displaced regardless. (*Id.*) Once again, this calls into question whether or not the escalator position would have been the alternative ROM, transfer to a lesser position, or otherwise.

Consequently, it would be improper for this Court to grant summary judgment to either party on this issue. Defendant has been able to adequately show that the position was eliminated and Defendant bore no responsibility to displace another ROM, because Davis has sufficiently placed this fact in dispute. Similarly, Plaintiff has not clearly established that the position was not eliminated such that Defendant had an obligation to displace a ROM to properly reinstate Davis. Therefore, both Defendant's and Plaintiff's Motions for Summary Judgment are **denied** on these grounds.

### 2. Limits on Plaintiff's Damages

Defendant argues that Davis' damages should be limited to a period from July 1, 2007 to August 7, 2007, the date at which Plaintiff reenlisted in the military. (*See* Doc. No. 63 at 13–14). Defendant avers that reenlisting in the military is a withdrawal from the workforce, and therefore relieves Crothall of damages liability. (*Id.* at 14). If military service is determined not to be a withdrawal from the workforce, Defendant alternatively argues that Plaintiff's claim to damages should be terminated at December 21, 2007—the point in time at which Plaintiff was offered and rejected the Chicago ROM position. (*Id.*

at 16). Defendant claims that this position was offered unconditionally and was nearly identical to Plaintiff's pre-deployment position. (*Id.*) Defendant also argues that Plaintiff is not entitled to liquidated damages because any violation of USERRA was not willful. (*Id.*) Plaintiff opposes the motion on all bases. (*See* Doc. No. 81 at 20–25).

### a. Failure to mitigate as a limitation on damages

Defendant argues that Plaintiff failed to mitigate his damages by: 1) failing to accept the other positions offered by Crothall; 2) not seeking other alternative employment; and 3) "withdrawing completely from the workforce" by reenlisting in the Army. (*See* Doc. No. 63 at 14). Plaintiff disputes these contentions and responds that: 1) the other offered positions were unacceptable; 2) that an employee is not required to accept lesser positions to be entitled to damages under USERRA; and 3) that reenlistment does not constitute a withdrawal from the workforce. (*See* Doc. No. 81 at 20).

Section 4312 of Title 38 limits the amount of time an employee can spend away from the employer, while still qualifying for USERRA benefits, to five years of military service. 38 U.S.C. § 4312(a)(2). The accompanying regulations hold that, "service performed to mitigate economic harm," when the "employer is in violation of its . . . reemployment obligations," shall not be counted as part of the stipulated five years. 20 C.F.R. § 1002.103(b).

▮ Courts have established that military service is equivalent to finding other employment and is not considered to be an act of withdrawing from the workforce. *See E.E.O.C. v. Local 638*, 674 F.Supp. 91, 104 (S.D.N.Y.1987) (finding "alternative work can hardly be called" removal from the workforce, and that "*a fortiori*, it would *be perverse to penalize* [the veter-

ans] with an abatement of backpay for the income they forewent" during their service, (emphasis added)). It may be appropriate, however, to offset an award of damages by the reenlisting employee's military pay, since some courts have found full payment justified only "if one can hold his supplemental job and his desired full time job simultaneously and there is reason to believe he will do so. . . ." *Hance v. Norfolk Southern R. Co.*, 571 F.3d 511, 520 (6th Cir.2009) (holding that it is appropriate not to offset when the Guardsman received Guard pay in addition to the full time position) (*quoting Bing v. Roadway Express, Inc.*, 485 F.2d 441, 454 (5th Cir. 1973)). In essence, such a scenario requires "[t]hose earnings [to] be independent of the position sought and should not be taken into account in back pay calculations." *Id.*

▮ In the event that Crothall violated USERRA by not promptly reemploying Davis in an appropriate position or offering an acceptable position, Davis is correct in asserting that his military service is sufficient to mitigate his damages. Finding that he no longer had an opportunity for an appropriate position, as he understood the offered positions, Davis sought reemployment a mere five weeks after being terminated from Crothall. (*See* Doc. No. 81 at 20). Furthermore, he undertook the step of reenlisting in military service. As such, on the basis that Plaintiff withdrew completely from the workforce by reenlisting in the Army, Defendant's motion is **denied.**

### b. Declining Other Alternative Reemployment Positions

▮ Crothall suggests that Plaintiff lost his rights under USERRA by not accepting one of the several reemployment positions offered to him. (*See* Doc. No. 86

at 6). Plaintiff counters that Crothall did not offer an acceptable reemployment position, and Plaintiff was not required to accept one of these positions, pursuant to the statutory language of USERRA. (*See* Doc. No. 81 at 18–19).

■■■ USERRA contains a preemption clause that establishes that the statute supersedes any, "State law ... contract, agreement, policy, plan, practice, or other matter that reduces, limits, or eliminates in any manner any right or benefit provided by this chapter, including the establishment of additional prerequisites." 38 U.S.C. § 4302(b) (2012). This prevents any extra requirements being added to qualify under USERRA protection pursuant to the § 4313(a)(2)(A). *Petty v. Metropolitan Government of Nashville–Davidson County*, 538 F.3d 431, 441–42 (6th Cir.2008). In situations where the offered positions do not comply with USERRA, courts have repeatedly held that acceptance of such offers is *not* necessary to preserve the veteran's rights under USERRA. *See Fessler v. Reading Co.*, 138 F.Supp. 203, 206 (E.D.Pa.1955) (holding a similar claim by defendant would negate purpose of Act to restore veterans to proper positions), *Hanna v. American Motors Corp.*, 724 F.2d 1300, 1309 (7th Cir.1984) (interpreting under the Veterans Reemployment Rights Act ("VRRA") a veteran "who has been denied reemployment ... has no duty, under the principles of mitigation, to continue at a job which is not comparable to his previous position"), *Ryan v. Rush–Presbyterian–St. Luke's Medical Center*, 15 F.3d 697, 699 (7th Cir. 1994) (stating plaintiff did not waive rights by not accepting position with temporarily reduced duties).

Defendant points to Rothgery's deposition testimony that Davis would have been reemployed into any of the offered positions at the same level of pay and benefits as that of when he left, and that any relocation costs would have been covered by Crothall. (*See* Doc. Nos. 65–2 at 44; 65–3 at 18). However, Plaintiff highlights an email Rothgery sent to another employee stating that Rothgery's plan was to employ Plaintiff as a BMET I/II at a "salary of 62 k," which represents an amount less than Davis' previous pay. (Doc. Nos. 69–3 at 55; 68 at 12). The parties also dispute whether relocation makes a position not of "like status," rendering the position not within USERRA requirements. (*See* Doc. Nos. 81 at 22; 86 at 7). If Rothgery's email indicated that the actual intent of the company was to pay Davis less than his pre-deployment salary, the position would not be of like pay. However, if the position was of like pay, it would be one factor which would indicate an acceptable substitute position of reemployment.

If a reasonable jury were to determine that the positions were unacceptable replacement positions under USERRA, Plaintiff could not be penalized for not accepting any of them. As the case law establishes, requiring a veteran to accept inferior positions while pending the outcome of litigation against the employer in order to preserve benefits would create a condition not included in the terms of USERRA and would be a violation of 38 U.S.C. § 4302(b). Conversely, if a reasonable jury found that the offered positions did comply with the USERRA requirements, Defendant would no longer have an obligation to Plaintiff. Because the parties have pointed to evidence in the record that creates a dispute as to whether these offered positions were the same as Davis' prior ROM position, a genuine dispute of material fact exists as to this issue and it

will remain an issue for the finder of fact.[6] Therefore, the Court cannot make a determination of whether Davis failed to mitigate his damages by not accepting the offered positions. For these reasons, Defendant's motion is **denied.**

### c. Chicago ROM Position

Defendant also argues that any damages should be limited to the time period of when it offered and Plaintiff rejected the Chicago ROM position. (*See* Doc. No. 63 at 16). Defendant states that this position was an unconditional offer for reinstatement, albeit in a different location, and permitted the Plaintiff to reassume the same role as his previous ROM position. (*Id.*). Plaintiff, however, argues that the Chicago ROM position was inadequate in that (1) it was untimely offered, and (2) it was not of same status due to the necessary relocation. (*See* Doc. No. 81 at 21). Also, Plaintiff did not accept the offer because he had already reenlisted in the Army and was under contract with the U.S. government—and allegedly did not want to work for Crothall.[7] (*See* Doc. No. 63 at 15).

 USERRA requires that an employee, "upon completion of a period of service in the uniformed services, *shall be promptly reemployed* in a position of employment ..." 38 U.S.C. § 4313(a) (emphasis added). " 'Prompt reemployment' means as soon as practicable under the circumstances of each case. Absent unusual circumstances reemployment must occur within two weeks of the employee's application for reemployment." 20 C.F.R. § 1002.181. Unfortunately, "there is a dearth of case law" on what constitutes "prompt reemployment." *Vander Wal v. Sykes Enterprises, Inc.*, 377 F.Supp.2d 738, 746 (D.N.D.2005) (finding in one instance, a week is not too long for reemployment standards under USERRA; in another instance, there was no delay when the plaintiff started work on the first day he said he was available to return). However, it is clear that "USERRA does not require *immediate* reinstatement." *Id.* at 747 (emphasis in original). In *Serricchio v. Wachovia Securities LLC*, 658 F.3d 169 (2d Cir.2011), the Second Circuit found Wachovia's failure to reemploy the veteran for over four months to be a violation of USERRA. *Id.* at 182. The Sixth Circuit has found an employer in violation of USERRA when it failed to reemploy a returning veteran for a period of three weeks, and then assigned him to the wrong position due to an investigation of whether the veteran was still qualified for the position. *Petty v. Metro. Gov't of Nashville–Davidson Cnty.*, 538 F.3d 431, 444 (6th Cir.2008).

 Here, Crothall offered "the first [ROM] position that became avail-

---

6. The question of whether the offered positions were adequate reemployment positions also turns on the question of whether Plaintiff's position was actually eliminated. If the position were not eliminated, the employer must, in the very least, reemploy the veteran in a position of like seniority, status, and pay. 38 U.S.C. § 4313(a)(2)(A). However, if Plaintiff's position was formally eliminated, applying the interpretation of *Rivera–Meléndez*, the employer must only offer the available positions.

7. Defendant made this accusation in its CSMF. (Doc. No. 64 at ¶ 69). Plaintiff counters that the response is taken out of context: Plaintiff did not want to be reemployed out of fear of future retaliation or unfair work environment. (Doc. No. 79 at ¶ 69). Nevertheless, the reason as to why Plaintiff denied the offer is not material to the analysis here, since it only focuses on the job itself: if the job was an inadequate reemployment position, then Plaintiff was not required to accept it for any reason; if the job was an adequate reemployment position, then Defendant met its requirements under USERRA.

able" in December 2007. (Doc. No. 63 at 10). However, unusual circumstances must be present to allow for a delay of greater than two weeks in reemployment. The most likely unusual circumstance to be claimed here would be the same as that proffered for Defendant's argument as to changed circumstances as discussed in Section V.A.I.a above; namely, that the prior position had been eliminated. And as discussed above, the "elimination of position" issue has been sufficiently established as a genuine dispute of a fact material to the outcome of this case, with its determination left for the finder of fact. Davis contends, however, that despite the timing of Crothall's offer, the position was nonetheless unacceptable because it required an unacceptable change of location. (*See* Doc. No. 81 at 18). This issue is rendered moot, however, because the position was offered long past the two-week threshold stated above. By not making an offer in a timely manner, Crothall necessarily cannot sufficiently establish that damages should be limited to this period.[8] As such, Defendant's Motion for Summary Adjudication to limit damages from July 1, 2007 until December 21, 2007, is **denied.**

### d. Liquidated Damages

If Davis can successfully establish his claims at trial, he requests an award that includes liquidated damages on the basis

that Crothall's failure to reemploy him was willful. (*See* Doc. No. 1). Defendant disputes this, stating that it complied with USERRA, and that even if it did not comply, its intent, and attempts to comply, obviate a claim of willful or reckless noncompliance. (*See* Doc. No. 63 at 16). Through its motion for summary judgment, Defendant asks the Court to bar Davis from seeking liquidated damages at trial. *Id.* at 18.

 USERRA provides that the "court may require the employer to pay the person an amount equal to the amount referred to in subparagraph (B) as liquidated damages, if the court determines that the employer's failure to comply with the provisions of this chapter was willful." 38 U.S.C. § 4323(d)(1)(C). Willfulness is present when, "the employer either knew or showed reckless disregard for whether its conduct was prohibited by [USERRA]." 20 C.F.R. § 1002.312(c). The liquidated damages provision is an aspect of USERRA not incorporated into USERRA's predecessors. *Fink v. City of New York*, 129 F.Supp.2d 511, 523 (E.D.N.Y.2001). Additionally, there is a lack of case law exploring liquidated damages on this issue. *Petty v. Metro. Gov't of Nashville & Davidson County*, 687 F.3d 710, 723 (6th Cir.2012). As such, Courts have looked elsewhere for a definition of willful, finding the most

---

**8.** However, if the Court did engage in an analysis of this argument, Plaintiff cites the House Report for USERRA which states that change of location may be "particularly violative of like status." (Doc. No. 67 at 15). This House Report, however, cites a case in which the veteran would have been reassigned to a different location with the following factors present: he would not have received the benefit of relocation costs, the previous position was still in existence—but otherwise occupied, and he had a pregnant wife too close to her delivery date to travel to the new job location. *See Armstrong v. Cleaner Services, Inc.*, 1972 WL 756 (M.D.Tenn. Feb. 17, 1972).

Plaintiff fails, however, to apply the regulations which describe the escalator position which he cites so often. These regulations specifically state "the status of the reemployment position requires the employer to assess what would have happened to such factors as the employee's opportunities for advancement, working conditions, *job location*, shift assignment, rank, responsibility, and *geographical location* ..." 20 C.F.R. § 1002.194 (emphasis added). Clearly, an employer may, at times, reemploy the veteran in a different location. Therefore, the job location is not sufficient in itself to render the position unacceptable under USERRA.

appropriate definition to be when, "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the law at issue." *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 128, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985). Applying this standard, Courts have found mere notice that an employee was asserting a USERRA claim not enough to qualify as recklessness. *Duarte v. Agilent Technologies, Inc.,* 366 F.Supp.2d 1039, 1048 (D.Colo. 2005). When there is a good faith dispute regarding the employer's obligation under USERRA, the Sixth Circuit found no willful violation. *Petty,* 687 F.3d at 722. However, when the employer failed to respond to the reinstatement request for over two months, the violation was found to be willful, and liquidated damages were awarded. *Serricchio v. Wachovia Securities LLC,* 658 F.3d 169, 191 (2nd Cir.2011). The burden is on the plaintiff to establish a willful violation of USERRA. *Paxton v. City of Montebello,* 712 F.Supp.2d 1017, 1021 (E.D.Cal.2010), citing *EEOC v. Massey Yardley Chrysler Plymouth, Inc.,* 117 F.3d 1244, 1250 (11th Cir.1997)

 Davis responds to Defendant's instant request to bar him from seeking liquidated damages by arguing that the burden of proving willfulness is shifted because Defendant allegedly raises a "reliance-on-advice-of-counsel" affirmative defense. (*See* Doc. No. 81 at 22). Plaintiff asserts that such a defense is untimely raised for the first time in Defendant's brief in support of its motion for summary judgment. (*See id.*). Davis makes this argument in response to Defendant stating that it attempted to comply with USERRA, which included inquiring of its counsel concerning proper actions. Defendant argues that it is not raising an affirmative defense, but is using this as one of multiple reasons demonstrating why Crothall did

not willfully violate USERRA. (*See* Doc. No. 86 at 8). In its brief in support of this motion, Defendant attempts to paint a picture that details its good-faith efforts to meet Plaintiff's USERRA rights in the best way for the company. Defendant is not, as Plaintiff alleges, raising a complete affirmative defense in their brief, and attempting to negate Plaintiff's claims solely because Crothall consulted with an in-house attorney. This Court is inclined to agree with Defendant and does not believe that Crothall now raises this as an affirmative defense. As such, the burden of proving willfulness for purposes of the instant motions before the Court will not shift to Crothall.

Responding to Defendant's contention that it acted willfully, Plaintiff avers that facts exist showing Defendant violated USERRA willfully or with reckless disregard. (*See* Doc. No. 81 at 24). These include Defendant's offer of a "grossly inferior" position to Davis; its failure to inform or to offer Schwarz' ROM position to Davis; Defendant's failure to apply the company's policy of transferring employees when their jobs were terminated; and the company's official reason for termination being Davis' failure to return from military leave. (*See id.*). Defendant disputes many of these facts, stating that the other jobs offered were adequate replacements, demonstrating that Schwarz's ROM position was not filled and eliminated, and that a transfer policy was not automatic. (*See* Doc. Nos. 65–1 at ¶ 12; 78–3 at 4–6; 86). Further, Defendant disputes that how these facts even relate to inferring willful intent or reckless disregard for USERRA requirements. (*See* Doc. No. 86 at 7–8).

If a reasonable jury determined the Plaintiff's juxtaposition of the facts and found that Crothall willfully violated USERRA, or did so with reckless disregard, Crothall would be forced to pay liquidated

damages. This could double the damages Crothall would owe Plaintiff based on US-ERRA's liquidated damages provision. However, if a jury believed that Defendant's actions, including consulting with its in-house counsel and offering alternative positions of employment, were a good-faith attempt to comply with USERRA, it would not award liquidated damages to Plaintiff. Accordingly, the dispute surrounding the facts alleging willful failure to reemploy precludes summary judgment on the issue of barring liquidated damages at trial. Defendant's motion is **denied.**

## B. Plaintiff's Partial Motion for Summary Judgment

In his Partial Motion for Summary Judgment, Plaintiff asks the Court to: 1) find in his favor on his claims that Crothall violated USERRA; 2) find that Crothall may not assert the affirmative defense that Defendant's circumstances changed, making reemployment impossible or unreasonable; 3) find that Crothall may not assert an affirmative defense that it offered acceptable reemployment positions; and 4) find that Crothall may not assert an affirmative defense that Plaintiff failed to mitigate his damages. (*See* Doc. No. 74–1 at 1). Defendant opposes Plaintiff's motion on all grounds.

The Court will examine each of these issues in turn.

### 1. Plaintiff's USERRA Claims

Plaintiff contends that Defendant failed to properly reemploy him into his proper escalator position. (*See* Doc. No. 67 at 5). Plaintiff argues that he would have held Aulisio's ROM position, if not for his military leave of absence. (*Id.* at 7). Further, Plaintiff asserts that the alternate positions he was offered were not of like status and pay, and therefore not acceptable reemployment positions under USERRA. (*Id.* at 12). Defendant responds by argu-

ing that Davis would not have, with reasonable certainty, been given Aulisio's ROM position instead of Aulisio. (*See* Doc. No. 76 at 3). Defendant further contests the proposition that the positions it offered were not sufficient replacement positions in accordance with USERRA. (*Id.* at 10).

As discussed above, whether Plaintiff's pre-deployment position was eliminated is mired in a factual dispute between the parties: Defendant alleges that the position was eliminated due to declining sales, while Plaintiff argues the position was never formally eliminated and was occupied by Aulisio. This fact is a threshold issue that must be determined prior to analyzing the parties' arguments in regards to Plaintiff's USERRA claims. If the position was not formally eliminated, a reasonable jury could find that a replacement occupied Plaintiff's former position. In such a situation, Crothall would be in violation of Plaintiff's rights guaranteed by USERRA. However, a reasonable jury may find that the position was eliminated, and consequently be forced to look at other factors as to whether or not Plaintiff would have been transferred to Aulisio's ROM position or to another position, or terminated.

Accordingly, the Court will leave the determination of whether Defendant acted in violation of USERRA to the fact finder. Plaintiff's motion on this basis is **denied.**

### 2. Defendant's Affirmative Defense: Alternative Reemployment Positions

Plaintiff requests the Court to find that Crothall did not offer appropriate alternative positions of reemployment, and as such should be barred from raising this defense at trial. (*See* Doc. No. 67 at 12). Defendant responds that the offered positions were of adequate status and pay to

meet USERRA compliance. (*See* Doc. No. 76 at 10).

As discussed above, the determination of whether the other positions were of adequate status is not appropriate for the Court to determine at this time because fact disputes surround the rate of pay and similarity of other factors of the offered positions. The question of whether Plaintiff's position was eliminated weighs heavily on the determination of whether the alternative reemployment positions were adequate under USERRA. *See, supra,* n. 4. Therefore, it would be inappropriate for the Court to consider this affirmative defense here. Plaintiff's motion is **denied.**

### 3. Defendant's Affirmative Defense: Mitigation of Damages

Plaintiff requests the Court to bar Defendant from presenting an affirmative defense of mitigation of damages because Crothall cannot sufficiently establish that Davis failed to mitigate his damages. (*See* Doc. No. 67 at 19). Defendant opposes this request. (*See* Doc. No. 76 at 12).

 A defendant can establish that a plaintiff failed to mitigate his damages by showing that the plaintiff completely withdrew from the employment market. *Holocheck v. Luzerne County Head Start, Inc.,* 2007 WL 954308, *14 (M.D.Pa. Mar. 28, 2007). The burden is on the employer to demonstrate that the plaintiff failed to mitigate damages. *Id.* at *13. The duty to mitigate requires the plaintiff "to use reasonable diligence in attempting to find other suitable employment which, had it been secured, would thus have reduced or minimized his monetary loss or damage." *Anastasio v. Schering Corp.,* 838 F.2d 701, 709 (3d Cir.1988). Further, the employee must continue to seek employment and remain a member of the workforce and accept employment. *See Booker v. Taylor Milk Co., Inc.,* 64 F.3d 860, 865 (3d Cir. 1995).

As analyzed in Section A.2.a., *supra,* the Court found that Plaintiff did mitigate his damages by promptly reenlisting into military service. Because Davis mitigated his damages, he is not precluded from recovering damages. Additionally, the Court need not determine whether or not the non-compete agreement has any bearing on Plaintiff's duty to mitigate because Davis mitigated his damages by reenlisting in the Army. Through reenlistment, Davis ensured a steady job with a regular paycheck, which currently runs through 2018. In essence, he sought "other suitable employment" which "minimized his monetary loss or damage." *Anastasio,* 838 F.2d at 709. Reenlistment in the armed services cannot be construed as a complete withdrawal from the labor market. *See E.E.O.C. v. Local 638,* 674 F.Supp. at 104. Here, Davis attempted to return to his former ROM position with Crothall, and when this proved futile, he reenlisted himself into military service and successfully reentered the employment market. Therefore, the Court finds it appropriate to bar Defendant from raising the defense that Plaintiff failed to mitigate his damages by reenlisting in the Army. Plaintiff mitigated his damages. Plaintiff's motion on this basis is **granted.**

### 4. Defendant's Affirmative Defense: Changed Circumstances

Plaintiff argues that, as a matter of law, Defendant's circumstances had not changed sufficiently so as to make reemployment impossible or unreasonable. (*See* Doc. No. 67 at 21). Crothall contends that circumstances had changed dramatically, precluding Plaintiff from being reemployed into his former ROM position. (*See* Doc. No. 76 at 1). Davis argues that had he not entered military service, he otherwise would have occupied the ROM position subsequently held by Aulisio, or alter-

natively, occupied the position held by Schwarz upon Schwarz' resignation from Crothall. (*See* Doc. No. 67 at 24–25).

As detailed above, summary judgment is inappropriate on the affirmative defense of whether changed circumstances created a situation where it was impossible or unreasonable for Defendant to reemploy Davis as a ROM. (*See supra,* Section V.A.1.a). Whether or not Plaintiff's previous ROM position with Crothall was eliminated is fundamental to this defense. Davis points to evidence that another employee was named as acting ROM for Plaintiff's previous position. Additionally, he has cast into doubt Crothall's assertion that the closing of the offices that did not include the ROM position was done on the basis of poor economic conditions. Whether or not the position was actually eliminated is basic to determining if circumstances were so changed as to render reemployment impossible or unreasonable. If the position had not been eliminated, changed circumstances may not serve as a defense. If it had been eliminated, a further analysis of whether changed circumstances apply would be necessary. Because there exists a factual dispute regarding the elimination of the pre-deployment ROM position, it is unnecessary for the Court to further analyze whether the Schwarz ROM position would have been the proper position of reemployment for Plaintiff.

Consequently, Plaintiff's motion to prevent Defendant from raising the affirmative defense that circumstances had changed, thereby making Davis' reemployment impossible or unreasonable, is **denied.**

## VI. CONCLUSION

With regard to Defendant's Motion for Summary Judgment, or, in the Alternative, Summary Adjudication, Defendant's motion is **DENIED** on all claims.

With regard to Plaintiff's Motion for Partial Summary Judgment, Plaintiff's motion is **DENIED** on the following claims: 1) that Defendant unlawfully failed to reemploy him in compliance with 38 U.S.C. § 4313(a)(1); 2) that summary judgment be entered against Defendant on its affirmative defense alleging that Plaintiff's claims under USERRA fail due to rejection of offered positions; and 3) that summary judgment be entered against Defendant on its affirmative defense alleging that Defendant's circumstances had changed so as to make Plaintiff's reemployment impossible or unreasonable. Plaintiff's motion is **GRANTED** only with regard to the claim that Defendant shall be barred from asserting its affirmative defense that Plaintiff failed to mitigate damages.

An appropriate order follows.

### *ORDER*

**AND NOW,** this 6th day of August, 2013, in accordance with the forgoing memorandum opinion, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment, or in the Alternative, Summary Adjudication (Doc. No. 62) is **DENIED** on all claims.

It is also **ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. No. 66) is **DENIED** in part and **GRANTED** in part. Plaintiff's motion is **DENIED** on the following claims: 1) that Defendant unlawfully failed to reemploy him in compliance with 38 U.S.C. § 4313(a)(1); 2) that summary judgment be entered against Defendant on its affirmative defense alleging that Davis' claims under USERRA fail due to rejection of offered positions; and 3) that summary judgment be entered against Defendant on its affirmative defense alleging that Defendant's circumstances had changed so as to make

Plaintiff's reemployment impossible or unreasonable. Plaintiff's motion is **GRANTED** only with regard to the claim that Defendant shall be barred from asserting its affirmative defense that Plaintiff failed to mitigate damages.